**C.A. LA SEGURIDAD, As Subrogee, Plaintiff-Appellant,**

v.

**DELTA STEAMSHIP LINES, Defendant-Appellee.**

**No. 82–5949.**

United States Court of Appeals, Eleventh Circuit.

Dec. 12, 1983.

---

Armstrong & Mejer, Alvaro L. Mejer, Coral Gables, Fla., for plaintiff-appellant.

James L. Dennis, Fowler, White, Burnett, Hurley, Banick & Strickroot, P.A., Miami, Fla., for defendant-appellee.

Before RONEY, HATCHETT and ANDERSON, Circuit Judges.

R. LANIER ANDERSON, III, Circuit Judge:

This case involves a claim by a shipper's insurer, C.A. La Seguridad ("Seguridad"), against a seagoing carrier, Delta Steamship Lines, for loss of cargo. The sole issue on appeal is whether the trial court applied the proper standard of proof in finding that Seguridad failed to prove a contract deviation, which would have deprived Delta of liability limitations contained in the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C.A. § 1304(5) (West 1975). Finding no error, we affirm.

## FACTS

Seguridad's insured contracted to have Delta ship three boxes of cement-making machinery from New York City to La Guaira, Venezuela. The invoice value of the three boxes was $28,545. The machinery was stowed on board the M/V "Del Campo" without incident, and the carrier issued a bill of lading for the three boxes. After sailing from New York, the vessel

loaded additional cargo in Baltimore, Philadelphia, and Charleston. The M/V "Del Campo" then sailed to Venezuela, unloading at Puerto Cabello, La Guaira, and Maracaibo. Thereafter, the vessel returned to the United States, calling at Baltimore and Philadelphia before arriving in Newark.

The three boxes of machinery were not delivered in La Guaira. Subsequent attempts to locate the cargo were unsuccessful. Delta's agent in La Guaira reported to Delta's claim office in New York that tracers sent to the other ports had failed to locate the "short delivered" cargo. The ship itself was searched for the cargo during its return to the United States. Apparently, the search was fruitless, although Delta never produced the records of the search.

Seguridad paid its insured's claim of $31,-399.58 for the lost cargo. Asserting its subrogation rights against Delta, Seguridad then sued Delta for the invoice value of the cargo. Delta admitted liability, but relied on § 4 of COGSA, 46 U.S.C.A. § 1304(5) (West 1975), which limits a carrier's liability to $500 per package.[1] Seguridad argued that Delta had deviated from the contract of carriage by unloading the cargo at another port and was therefore not entitled to the benefit of COGSA's liability limitations. The district court held that Seguridad had failed to prove delivery at another port. The court found that the evidence simply showed nondelivery: "No one knows what happened to the cargo, but many things could have happened, for example, they could have been stolen after loading and before sailing. Plaintiff has the burden of proof to show a deviation and has failed to meet its burden." Record, vol. 1 at 198. Accordingly, the court limited Delta's liability to $500 per box, a total of $1,500. On

appeal, Seguridad argues that the district court held it to an overly stringent standard of proof.

## LEGAL STANDARDS

■ A deviation from the contract of carriage between a shipper and carrier is defined as " 'any variation in the conduct of a ship in the carriage of goods whereby the risk incident to the shipment will be increased.' " *Spartus Corp. v. S/S YAFO,* 590 F.2d 1310, 1313 (5th Cir.1979) (quoting *G.W. Sheldon & Co. v. Hamburg Amerikanische Packetfahrt A.G.,* 28 F.2d 249, 251 (3d Cir. 1928)).[2] The law in this circuit is that an *unreasonable* deviation "breache[s] the contract of carriage and render[s] [COGSA's] $500 per-package limitation a nullity," *id.* at 1317, leaving the carrier liable as an insurer for the full amount of damage to the cargo. *Calmaquip Engineering West Hemisphere Corp. v. West Coast Carriers,* 650 F.2d 633, 638 (5th Cir.1981) (Unit B). *See also Searoad Shipping Co. v. E.I. duPont de Nemours & Co.,* 361 F.2d 833, 835–36 (5th Cir. 1966) (insurer liability flows from deviation despite COGSA limitations). "[A] shipper can make out a case of unreasonable deviation simply by proving that his cargo was offloaded at a place other than the stipulated destination." *Spartus Corp. v. S/S YAFO,* 590 F.2d at 1314. The burden then shifts to the carrier to rebut this prima facie case by demonstrating that the offloading was reasonable. *Id.*

## DISCUSSION

■ In this case, Seguridad argues that it met its burden of proving that Delta unreasonably deviated from the contract by offloading the cargo at the wrong port. The insurer claims that all it needed to

---

**1.** Section 1304(5) provides:
  Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States ... unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading.

46 U.S.C.A. § 1304(5) (West 1975).

**2.** In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Id.* at 1209.

show to satisfy that burden was that Delta received the cargo at the originating port and then failed to discharge it at the destination port. Seguridad cites *Blasser Brothers, Inc. v. Northern Pan-American Line,* 628 F.2d 376 (5th Cir.1980), in support of this formulation of the burden of proof. *Blasser,* however, did not involve deviations. It set forth the burdens of proof in establishing liability for damage to cargo. Here the issue is not liability, which Delta admits, but the nullification of limits on liability. Proof that the carrier received cargo in good condition and delivered it in damaged condition does constitute a prima facie case of liability under *Blasser.* But more evidence is required to prove a deviation because, unlike liability, which is within the terms of the contract, a deviation nullifies terms of the contract.[3] Thus, we agree with cases from other jurisdictions holding that mere nondelivery does not prove a deviation. *See G.W. Sheldon & Co. v. Hamburg Amerikanische Packetfahrt A.G.,* 28 F.2d 249 (3d Cir.1928); *Shackman v. Cunard White Star,* 31 F.Supp. 948 (S.D.N.Y. 1940).

Seguridad further argues that even if nondelivery does not alone satisfy its burden to prove delivery to the wrong port, here nondelivery was buttressed by adverse inferences arising from Delta's failure to produce certain material documents. Delta did not produce the responses to the tracers sent to the various ports at which the M/V "Del Campo" called. Instead, Delta produced a report by its La Guaira agent describing those responses, which Delta's assistant claims manager testified was the only tracer response that Delta's claim office received. Nor did Delta produce the records of the search of the "Del Campo" for the missing cargo. Relying on *Tupman Thurlow Co. v. S.S. Cap Castillo,* 490 F.2d 302 (2d Cir.1974), appellant argues that Delta's nonproduction of material evidence exclusively within its control raises the inference that the evidence is unfavorable to Delta.

There are nonadmiralty cases in this circuit stating that the adverse inference to be drawn from a party's failure to produce evidence within its control " 'will not convert evidence otherwise insufficient into a prima facie case.' " *Transcontinental Gas Pipeline Corp. v. Mobile Drilling Barge,* 424 F.2d 684, 694 (5th Cir.) (quoting *United States v. R.L. Roberson,* 233 F.2d 517, 519 (5th Cir.1956)), *cert. denied,* 400 U.S. 832, 91 S.Ct. 65, 27 L.Ed.2d 64 (1970). However, assuming *arguendo,* but expressly not deciding, that such an adverse inference, together with the fact of nondelivery, could, under proper circumstances, satisfy the shipper's burden of proving delivery to the wrong port, we decline for two reasons to hold that it did so here.

■ First, the inference that the tracer responses were not produced because they are unfavorable to Delta is very weak. The district court declined to sanction Delta for failing to produce the tracers because it concluded that Delta did not possess them. Moreover, the report of Delta's La Guaira agent described the tracer responses as "negative." Seguridad suggests no reason to doubt the validity of this report. Both these considerations refute the inference that the responses are unfavorable to Delta. *Cf. EEOC v. Trans World Airlines, Inc.,* 544 F.Supp. 1187, 1221 (S.D.N.Y.1982) (no adverse inference flows from failure to produce records that do not exist).

Second, Seguridad was not diligent in attempting to discover the search reports of the "Del Campo." Seguridad did not specifically ask Delta to produce the ship's search records and consequently never asked the district court to compel their production or impose sanctions on Delta for its failure to produce them.

In short, the adverse inference flowing from Delta's nonproduction of the search reports and tracer responses is weak and could not satisfy Seguridad's burden of

---

**3.** Because COGSA provisions are automatically incorporated into every contract of carriage, 46

U.S.C.A. § 1302 (West 1975), liability limitations are both statutory and contractual.

proving the deviation of delivery to the wrong port. Therefore, we

AFFIRM.