**BIRDSALL, INC., as agent for Tropical Shipping, Plaintiff,**

v.

**TRAMORE TRADING CO., INC., Defendant.**

**No. 91–8016–CIV.**

United States District Court, S.D. Florida.

Aug. 13, 1991.

Thomas V. Halley of Halley, Calkins & Avallone, P.C., New York City, for plaintiff.

Gregg R. Schwartz, Law Offices of Welcher & Clark, Miami, Fla., for defendant.

## ORDER ON MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS COUNTERCLAIM

PAINE, District Judge.

This matter comes before the Court upon the Motion to Dismiss Defendant's Counterclaim and for Final Summary Judgment filed by the Plaintiff, BIRDSALL, INC., as agent for TROPICAL SHIPPING ("BIRDSALL") (DE 11).

## BACKGROUND

On January 11, 1991, BIRDSALL filed suit against TRAMORE TRADING CO., INC. ("TRAMORE") for $19,815.38 in ocean freight due on six December 1989 shipments of cantaloupes, plus interest, costs, and attorneys' fees. *See* Complaint (DE 1). TRAMORE answered (DE 6) and filed a Counterclaim (DE 7) for $27,652.25, alleging damage to other cantaloupes shipped in November 1989. BIRDSALL has simultaneously moved for summary judgment on its Complaint and to dismiss Defendant's Counterclaim (DE 11).

## ANALYSIS

### A. Motion for Summary Judgment on BIRDSALL's Claim

Summary judgment should be granted if the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). When a motion for summary judgment is supported by record evidence, an adverse party may not rest upon the mere allegations or denials in its pleadings, but must set forth facts showing that there is a genuine issue for trial; otherwise, summary judgment may be entered against the adverse party. Fed.R.Civ.P. 56(e).

### 1. Liability for Ocean Freight

The question for summary judgment is whether the TRAMORE owes the ocean freight for six December 1989 shipments. As a matter of law, if a consignee accepts a shipment, he becomes liable for the full amount of freight charges. *Louisville & Nashville R.R. v. United States*, 267 U.S. 395, 397, 45 S.Ct. 233–234, 69 L.Ed. 678 (1925). To support its assertion that TRAMORE owes the ocean freight for the December shipments, BIRDSALL has provided copies of each of the bills of lad-

ing for the December cantaloupe shipments. The bills of lading show BIRD-SALL as the general agent for Tropical Shipping and TRAMORE as the consignee, identify that charges are freight *collect* to TRAMORE, and add up to $19,815.38. An affidavit of Deborah Casdorph, the Manager of Credit and Collections of BIRDSALL, states that the cantaloupe shipments were ultimately delivered to TRAMORE in Miami, Florida during December, 1989, that BIRDSALL has not been paid for these shipments, that TRAMORE is the responsible party to pay the charges under the applicable bills of lading, and that the $19,815.38 amount has been due since December 14, 1989.

BIRDSALL supported its motion for summary judgment with affidavits, as provided in Rule 56. TRAMORE has neither responded to this motion nor provided any evidence to contradict BIRDSALL's assertions regarding the ocean freight. *See* DE 6 at ¶ 5 (admission of delivery). Furthermore, the joint status report lists BIRD-SALL's motion for summary judgment as "unopposed" (DE 22); at a status conference held July 22, 1991, TRAMORE stipulated that the motion for summary judgment on BIRDSALL's claim is indeed "unopposed." Therefore, summary judgment shall be entered against TRAMORE for the ocean freight.

### 2. Damages

Having determined the liability issue, the question becomes what items, beyond the freight bill, are properly included in the judgment. BIRDSALL seeks pre-judgment interest, costs, and attorneys' fees.

#### a. Interest

■ In admiralty, awards generally include pre-judgment interest. *Insurance Company of North America v. M/V Ocean Lynx*, 901 F.2d 934, 942 (11th Cir. 1990). Pre-judgment interest is not a penalty, but compensation to the plaintiff for the use of funds that were rightfully his. *Id.* Therefore, interest at twelve percent (12%) per annum, from December 14, 1989 to the date of entry of judgment, is due.

#### b. Costs

The prevailing party is, of course, ordinarily entitled to an award of taxable costs. Fed.R.Civ.P. 54(c); *see Manor Healthcare Corp. v. Lomelo*, 929 F.2d 633, 639 (11th Cir.1991). BIRDSALL has requested, and will be awarded, $165.00 in costs. *See* Statement (DE 25).

#### c. Attorneys' Fees

■ BIRDSALL alleges that TRAMORE is legally obligated to pay its attorneys' fees, citing the provision in paragraph 10 of each bill of lading that:

> Shipper, *Consignee*, Owner of the goods *agrees to pay all cost of collection including reasonable Attorney fees in the event freight*, duties, taxes and charges or other expenses in connection with the shipment are *not paid when due* whether suit be brought or not.

(Emphasis added.)

TRAMORE filed a motion (DE 8) with a supporting memorandum (DE 9) to strike the claim for attorneys' fees, citing *Sea-Land Service, Inc. v. American International Movers, Inc.*, 528 F.Supp. 224, 226 (W.D.Wash.1981), which held that there is no statutory authority for awarding attorney's fees to an ocean carrier in a suit to recover from a shipper the balance due and owing on a freight contract. BIRDSALL, however, has clear *contractual* authority for such an award. *See, e.g., Spinks v. Chevron Oil Company*, 507 F.2d 216, 226 (5th Cir.1975) (enforcing fee provision in admiralty proceeding).[1]

Thomas V. Halley, Esquire, attorney for BIRDSALL, filed an affidavit stating that his firm had billed $2,130.00 (14.2 hours at $150.00 per hour) for work through March 7, 1991. Mr. Halley does not attempt to segregate work performed on the main claim from that devoted to the counterclaim; the work may well be inextricably intertwined. In any event, TRAMORE,

---

1. The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

while denying BIRDSALL's *right* to attorneys' fees, has not questioned the *amount* sought. Based upon the circumstances, the Court will award $2,130.00 as a reasonable fee for all work on the main claim through the entry of judgment.

## B. Motion to Dismiss TRAMORE's Counterclaim

The Counterclaim involves two shipments of cantaloupes that TRAMORE alleges arrived damaged in Pompano Beach, Florida on or about November 24, 1989. *See* Counterclaim (DE 7) at ¶ 4. Paragraph 2 of each bill of lading provides that the bill is subject to the Carriage of Goods by Sea Act of the United States of America ("COGSA").

BIRDSALL contends that the Counterclaim is barred by COGSA since it was filed more than one year after actual delivery of the goods. *See* 46 App.U.S.C. § 1303(6) (limitations period). It is undisputed that the Counterclaim was filed February 22, 1991, one year and three months after the November 20 and 21, 1989 shipments were delivered. TRAMORE, however, argues that COGSA's limitations period should not apply because (i) BIRDSALL's misconduct estops it from raising the statute of limitations; (ii) a negligent agent for the carrier cannot invoke the limitations period; (iii) the vessel was unseaworthy; and (iv) BIRDSALL deviated from the contract of carriage, becoming an insurer of the goods.

Because BIRDSALL has supported its motion with affidavits, the motion will be characterized as one for summary judgment. *See Carter v. Stanton,* 405 U.S. 669, 671, 92 S.Ct. 1232, 1234, 31 L.Ed.2d 569 (1972); *see also Campbell v. Upjohn Co.,* 498 F.Supp. 722 (W.D.Mich.1980) *aff'd,* 676 F.2d 1122 (6th Cir.1982). Anticipating this characterization, TRAMORE submitted a memorandum in opposition to BIRDSALL's motion to dismiss and with a supporting affidavit (DE 17).

### 1. *TRAMORE's Opposition*
#### a. Estoppel

■ Estoppel arises where a plaintiff has been justifiably misled by the defendant's actions, which lull the plaintiff into a false sense of security and so induce it not to institute suit in the requisite time period. *Austin, Nichols & Co., Inc. v. Cunard Steamship Ltd.,* 367 F.Supp. 947, 949 (S.D.N.Y.1973) (citing *Glus v. Brooklyn Eastern Terminal,* 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959)); *see also Sanchez v. Loffland Bros. Co.,* 626 F.2d 1228, 1231 (5th Cir.1980), *cert. denied,* 452 U.S. 962, 101 S.Ct. 3112, 69 L.Ed.2d 974 (1981).

TRAMORE provides the affidavit of Mr. Richard P. Murray, its Manager, and correspondence between TRAMORE and BIRDSALL to indicate that the parties negotiated the damage claim for approximately eleven months. In his February 13, 1990 letter to BIRDSALL, however, Mr. Murray admits: "I am aware that legally, to fully protect my position, I should initiate action through the court system. I don't want to do this." (DE 17, Exhibit B). This knowing reluctance to file suit was reiterated in his August 10, 1990 letter (DE 17, Exhibit G). TRAMORE continued to negotiate with BIRDSALL past the one-year period. TRAMORE now argues that, since BIRDSALL did not formally and finally reject the claim until the limitations period had run, it is estopped to raise the statute in defense.

Mr. Murray's affidavit does not reflect that BIRDSALL made any affirmative misstatements regarding TRAMORE's legal rights or promised any benefit if TRAMORE refrained from filing suit. Without such action, TRAMORE could hardly have been justifiably *misled* by BIRDSALL or *induced* not to initiate litigation during the requisite time period.

TRAMORE's reliance on *Michelena & Co. v. American Export & Isbrandtsen Lines,* 258 F.Supp. 479 (D.P.R.1966), where the doctrine of estoppel was applied to prevent the defendant from raising a statute of limitations defense, is misplaced. In *Fireman's Insurance Co. of Newark, NJ v. Gulf Puerto Rico Lines, Inc.,* 349 F.Supp. 952, 958 (D.P.R.1972), the very judge who authored *Michelena* expressly limited that case to its unique facts: undoubtedly malicious misrepresentations of the carrier designed to lead the shipper to

believe the matter would be solved extrajudicially. *Michelena* does not apply to the ordinary cargo claim, in which some type of settlement conversations are held. *Id.* at 958–59.

The statute of limitations serves to lend certainty and finality to prospective litigation. *See United States v. Kubrick,* 444 U.S. 111, 117, 100 S.Ct. 352, 356, 62 L.Ed.2d 259 (1979). It is a potential plaintiff's duty to ensure that he files suit within the statutory period. *See Crown, Cork & Seal Co., Inc. v. Parker,* 462 U.S. 345, 352, 103 S.Ct. 2392, 2396, 76 L.Ed.2d 628 (1983). If mere settlement negotiations tolled the time for filing, the statute of limitations would be of little value. A cautious plaintiff may obtain a written waiver of the limitations defense during the time of negotiations, or file its complaint together with a motion to stay pending settlement discussions. TRAMORE simply ignored its legal obligations.

In short, because TRAMORE cannot establish reasonable reliance upon any affirmative misconduct of BIRDSALL, the estoppel argument fails.

### b. Negligence of Agent

■ TRAMORE cites *Cerro Sales Corp. v. Atlantic Marine Enterprises, Inc.,* 403 F.Supp. 562, 568 (S.D.N.Y.1975), for the proposition that an agent cannot avail itself of the COGSA limitations period, but rather may be fully liable for its acts of negligence. This argument, however, applies only when the bill of lading incorporating COGSA does not contain what is generally termed a "Himalaya Clause."[2] Each bill of lading involved in the Counterclaim contains such a clause in paragraph 4: "[e]very limitation herein contained to which the Carrier is entitled shall also be available to protect every Agent of the Carrier." Pursuant to the Himalaya Clause, the defenses and protections of COGSA, including the limitations period, extend to BIRDSALL as agent. *See Certain Underwriters, Etc. v.*

*Barber Blue Sea Line,* 675 F.2d 266, 269 (11th Cir.1982).

### c. Unseaworthy Vessel

■ Although Section 1303(1)(a) of COGSA requires a carrier to exercise due diligence to make the ship seaworthy, Section 1303(6) discharges the carrier of *all* liability in respect of loss or damage unless suit is brought within one year after delivery of the goods. The limitations period thus applies to claims of unseaworthiness.[3] *See Fireman's Insurance Co. of Newark, NJ v. Gulf Puerto Rico Lines, Inc.,* 349 F.Supp. 952, 956 (D.P.R.1972).

### d. Deviation

Finally, TRAMORE asserts that BIRDSALL deviated from the contract of carriage by permitting the cantaloupes to "live" in temperatures too high to survive and offloading them at a location not specified in the contract of carriage. Citing *C.A. La Seguridad v. Delta Steamship Lines,* 721 F.2d 322 (11th Cir.1983), TRAMORE argues that, by such deviation, BIRDSALL cannot benefit from the statute of limitations that is incorporated by reference into the contract.

■ A "deviation" from the contract of carriage is defined as any variation in the conduct of a ship in the carriage of goods whereby the risk incident to the shipment will be increased. *Id.* at 324. The law in the Eleventh Circuit is that an *unreasonable* deviation breaches the contract of carriage and renders COGSA's $500–per–package limitation, 46 App.U.S.C. § 1304(5), a nullity. *Id.* But the Eleventh Circuit has not addressed the issue of whether deviation nullifies the one-year statute of limitations.

The Southern District of New York recently held that COGSA's limitations provision addresses neither liability nor equitable results, but rather protects the parties' and society's interest in the prompt

---

**2.** The term comes from a British case, *Adler v. Dickson,* involving the vessel Himalaya. See *Brown & Root, Inc. v. M/V Peisander,* 648 F.2d 415, 417 n. 5 (5th Cir.1981), for a discussion of *Adler.*

**3.** The case cited by TRAMORE, *Columbus Co. v. Shore,* 276 F.2d 93 (5th Cir.1960), had nothing to do with the expiration of a statute of limitations.

resolution of disputes; thus, the one-year restriction is unaffected by a deviation. *Insurance Company of North America v. S/S Oceanis,* 690 F.Supp. 1365, 1367 (S.D.N.Y.1988). *S/S Oceanis* appears to conflict with that district court's prior ruling in *United States v. Wessel, Duval & Co.,* 115 F.Supp. 678, 684 (S.D.N.Y.1953). This Court, however, chooses to follow *S/S Oceanis,* a more recent and more thorough examination of the issue. Moreover, a Florida state court has likewise held that a deviation does not relieve a party from COGSA's statute of limitations requirement. *Corat Int'l, Inc. v. Saudi Nat'l Lines,* 439 So.2d 1035, 1036 (Fla. 3d Dist. Ct.App.1983).

### 2. The Harter Act

Based upon TRAMORE's opposition, this Court has determined that, *if COGSA applies,* the one-year statute of limitations bars the Counterclaim. But BIRDSALL did not clearly establish the applicability of COGSA. At the July 22, 1991 status conference, the Court requested briefing on this preliminary matter. BIRDSALL thereafter submitted a memorandum of law (DE 24), to which TRAMORE has responded (DE 26).

■ In 1936, the Harter Act, 46 App. U.S.C. §§ 190–96, was supplanted, in large part, by the enactment of COGSA. *See Caterpillar Overseas, S.A. v. S.S. Expeditor,* 318 F.2d 720, 722 (2d Cir.), *cert. denied,* 375 U.S. 942, 84 S.Ct. 347, 11 L.Ed.2d 272 (1963). COGSA's coverage, however, extends only to the period, in foreign commerce, "from the time when the goods are loaded on to the time when they are discharged from the ship," 46 App.U.S.C. § 1301(e). *Caterpillar,* 318 F.2d at 723. The Harter Act, therefore, remains applicable to the period between the discharge of cargo from the vessel and its proper delivery. *Id.*

■ In its memorandum, BIRDSALL contends that applying COGSA's limitation during pre- and post-loading phases is not inconsistent with the Harter Act. *See* DE 24 at 3. The Court disagrees. Where the Harter Act would ordinarily apply to an event, it forbids and nullifies all contractual terms which broaden a carrier's immunities and defenses beyond those granted by the act itself. 46 App.U.S.C. § 190. Furthermore, COGSA states, in pertinent part:

Nothing in this chapter shall be construed as superseding any part of sections 190 to 196 of this title [the Harter Act], insofar as they relate to the duties, responsibilities, and liabilities of the ship or carrier prior to the time when the goods are loaded on or after the time they are discharged from the ship.

46 App.U.S.C. § 1311.

■ COGSA's statute of limitations, therefore, cannot supersede the absence of such a limitation in the Harter Act[4] for the pre- and post-loading phases. *See Swift Textiles, Inc. v. Watkins Motor Lines, Inc.,* 799 F.2d 697, 703 (11th Cir.1986) (citing *Allstate Insurance Co. v. Int'l Shipping Corp.,* 703 F.2d 497, 499 (11th Cir. 1983)). Moreover, a contract of carriage that incorporates COGSA by reference necessarily incorporates COGSA's express deference to the Harter Act for these portions of the journey. *Allstate,* 703 F.2d at 499; *but see Atlantic Mutual Insurance Companies v. M/V Balsa 38,* 695 F.Supp. 165 (S.D.N.Y.1988); *Uncle Ben's v. Hapag–Lloyd Aktiengesellschaft,* 855 F.2d 215 (5th Cir.1988).[5]

■ As a matter of law, if the cantaloupes were damaged en route, the Counterclaim will be time-barred. If, however, the damage occurred during offloading, TRAMORE may proceed under the Harter

---

4. The limitations of liability section of the Harter Act, 46 App.U.S.C. § 192, contains no statute of limitations, but it is possible that laches or some other limitations period may apply. *See PPG Industries v. Ashland Oil Company–Thomas Petroleum Transit Division,* 527 F.2d 502 (3d Cir.1975).

5. The result may well be different had the bill of lading directly stated a one-year limitations period, rather than simply broadly referring to COGSA. *See Ralston Purina Co. v. Barge Juneau & Gulf Caribbean,* 619 F.2d 374 (5th Cir.1980).

Act. The point of damage remains a question of fact.[6] BIRDSALL has failed to foreclose the possibility that TRAMORE may recover; summary judgment is inappropriate. *See Celotex Corporation v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

## CONCLUSION

BIRDSALL is entitled to summary judgment on its claim for the December 1989 shipments. But the case must proceed as to TRAMORE's claim regarding the November 1989 shipments. Upon conclusion of the litigation, the Court will enter a single judgment reflecting the full adjudication.

Based upon all the foregoing, it is hereby

ORDERED and ADJUDGED as follows:

1. BIRDSALL's Motion to Dismiss Defendant's Counterclaim and for Final Summary Judgment (DE 11) is GRANTED in part and DENIED in part.

2. Summary judgment is granted in BIRDSALL's favor as to its Complaint against TRAMORE, in the amount of $19,-815.38 in principal, $165.00 in taxable costs, $2,130.00 in attorneys' fees, and pre-judgment interest at a rate of twelve percent (12%) per annum from December 14, 1989 to the date that final judgment is entered.

3. The motion to dismiss TRAMORE's Counterclaim, which has been treated as a motion for summary judgment, is denied.

4. A single judgment will be entered by the Court upon final adjudication of this case.

5. The parties shall, within twenty (20) days hereof, file a joint report setting forth (i) the status of settlement negotiations on TRAMORE's Counterclaim, and (ii) the advisability of referral to a United States Magistrate Judge or a private mediator for a settlement conference.

DONE and ORDERED.

---

**6.** Curiously, after failing to raise the Harter Act in its pleadings, then expressing uncertainty during the status conference as to the point of damage, TRAMORE has filed a memorandum asserting that "the damage to the cantaloupes *undeniably* occurred after the time they were discharged." DE 26 at 2 (emphasis added). In any event, this assertion is unsupported by record evidence. *See, e.g., Prince v. Sun Shipbuilding & Dry Dock Corp.*, 86 F.R.D. 106, 107 (E.D.Pa.1980) (argument of counsel in memorandum is not evidence).