UNIMAC COMPANY, INC.,
Plaintiff–Appellant,

v.

C.F. OCEAN SERVICE, INC.,
Defendant–Appellee.

No. 93–2706.

United States Court of Appeals,
Eleventh Circuit.

Feb. 6, 1995.

John C. Pelham, D. Andrew Byrne, Pennington & Haben, P.A., Tallahassee, FL, for appellant.

William Davis, Lynette Ebeoglu McGuinnes, Miami, FL, for appellee.

Before KRAVITCH and HATCHETT, Circuit Judges, and CLARK, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

The central issue presented in this admiralty case is whether a carrier's misdelivery of goods constitutes a deviation such that the one-year statute of limitations and $500 per package limit on liability set forth in the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C.A.App. §§ 1300–1315 (1994), do not ap-

ply. We hold that a misdelivery is not a deviation, and AFFIRM the district court's grant of summary judgment.

I.

Unimac Company, Inc. ("Unimac") is a manufacturer and seller of washing machines. C.F. Ocean Service, Inc. ("CFOS") is a non-vessel operating common carrier, engaged in the business of shipping goods from the United States to foreign destinations. At the time of the events in question, CFOS had a valid tariff on file with the Federal Maritime Commission.

On November 13, 1989, Unimac delivered a locked and sealed container to CFOS in Savannah, Georgia, for shipment to its customer, Algec Equipment ("Algec"), in Brisbane, Australia. On November 16, 1989, Unimac sent CFOS a letter of instruction directing CFOS to "handle this shipment on a 'sight draft' basis," explaining that "Algec must pay the bank [$30,650.67] for the equipment before obtaining it from the steamship line." Enclosed with the letter was the original invoice between Unimac and Algec, as well as the inland bill of lading. CFOS did not object to the terms set forth in Unimac's letter.

On January 30, 1990, Unimac again delivered cargo[1] to CFOS for shipment to Algec in Australia. On that day, Unimac sent CFOS a letter identical to the November 16, 1989 letter, directing CFOS that the amount of the sight draft for this shipment was $30,411.94. CFOS did not object to the terms set forth in this letter.

CFOS issued an ocean bill of lading for each of the shipments, which bills of lading it sent to Unimac.[2] The bills of lading were mailed after each of the ships had sailed, but prior to the ships' arrival in Australia. The reverse side of each bill of lading sets forth provisions governing the contract of carriage: Section 2(a) is a clause paramount, expressly incorporating COGSA into the contract of

---

1. The cargo was one container consisting of seven cartons. The district court found, and the parties do not dispute, that the cargo constituted seven "packages," within the meaning of 46 U.S.C.A.App. § 1304(5).

2. The November 13 cargo and the January 30 cargo were loaded onto separate ships. CFOS prepared each bill of lading utilizing its standard form.

carriage; Section 2(e) limits the carrier's liability to $500 per package; Section 2(d) provides that "All Risk" insurance may be obtained if the shipper gives written notice to CFOS declaring the value of the cargo and pays for the insurance; Section 20(b) discharges CFOS of all liability for suits not brought within one year of the date the goods were delivered or should have been delivered; and Section 12(c) incorporates the provisions of CFOS's tariff into the contract of carriage.[3] Unimac never objected to the terms set forth in the bills of lading, never contacted CFOS in order to obtain the extra insurance protection, and never paid the additional ad valorem rate for insurance.

On February 6, 1990, despite Algec's failure to arrange for payment of the goods, CFOS delivered the first shipment to Algec in Australia. The second shipment was delivered on March 16, 1990, and again, Algec did not arrange for payment. Algec has not paid Unimac for any merchandise it received from these shipments.

## II.

After unsuccessfully demanding payment from CFOS for the delivered merchandise, Unimac brought suit against CFOS in federal district court on February 19, 1991, seeking damages[4] for breach of contract and misdelivery of goods. The parties entered into a joint pretrial stipulation and agreed that the case could be resolved on summary judgment. CFOS filed a motion to dismiss. The district judge granted in part and denied in part each party's motion for summary judgment and denied CFOS's motion to dismiss. The court held that Unimac's claim for the first shipment was barred by COGSA's one-year statute of limitations. As to the second shipment, the court found that Unimac's letter of instruction directing CFOS to obtain a sight draft prior to delivery, was part of the

contract of carriage. However, the court held that pursuant to COGSA, recovery for the second shipment was limited to $500 for each of the seven packages delivered in the second shipment, and thus entered judgment in favor of Unimac for $3,500. Unimac appeals.

## III.

COGSA is a comprehensive statute intended to limit the liability of carriers engaged in international shipping. It applies to "all contracts for carriage of goods by sea to or from ports of the United States in foreign trade." 46 U.S.C.A.App. § 1312. The Statute defines "foreign trade" as "the transportation of goods between the ports of the United States and ports of foreign countries." *Id.* Because the dispute between Unimac and CFOS stems from a contract for the shipment of goods from Savannah, Georgia to Australia, COGSA governs this transaction.

CFOS argues that the district court correctly concluded that COGSA bars recovery for the first shipment and limits liability for the second shipment to $500 per package. 46 U.S.C.A.App. § 1303(6) provides that "the carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered." Because the first shipment was delivered on February 6, 1990 and Unimac did not file suit until February 19, 1991, more than one year later, CFOS asserts that Unimac is barred from recovery for any damages stemming from the first shipment.

Additionally, COGSA limits the carrier's liability to $500 per package "unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading." 46

---

**3.** Rule 12(b) of CFOS's tariff provides:

 If the Shipper desires to be covered for a valuation in excess of that allowed by the Carrier's regular Bill of Lading form [$500 per package], the Shipper must so stipulate in Carrier's Bill of Lading covering such shipments and such additional liability only will be assumed by the Carrier at the request of the Shipper and upon payment of an additional

charge based on the total declared valuation in addition to the stipulated rates....
 Rule 12(c) sets the ad valorem rate at 3.75% "of the value declared in excess of the said Bill of Lading limit of value and ... in addition to the base rate."

**4.** Unimac sought $61,062.61 in damages, the full value of the first and second shipments.

U.S.C.A.App. § 1304(5). CFOS asserts that the district court, pursuant to this provision, correctly limited Unimac's recovery for damages stemming from the second shipment to $3,500.

Unimac urges this court to hold that CFOS's failure to ensure that Algec had paid for the goods prior to releasing them, as instructed in Unimac's letters, constitutes a deviation of the contract of carriage. *See C.A. La Seguridad v. Delta Steamship Lines*, 721 F.2d 322, 324 (11th Cir.1983) (deviation from the contract of carriage strips carrier of its defenses under COGSA).[5] Unimac also asserts that it did not have a fair opportunity to set forth a higher value for the second shipment because it did not receive the bill of lading until after the ship had sailed, and therefore could not comply with § 1304's requirement that it declare a higher value for its cargo in the bill of lading. For the reasons set forth below, we decline to hold that a misdelivery[6] is a deviation. In addition, we hold that Unimac had notice of the requirements that it declare its goods a higher value and pay for insurance, and failed to do so.

### IV.

The district court found that Unimac's letters of instructions concerning delivery on a sight draft basis constituted part of the contract of carriage and CFOS does not appeal this finding. Unimac argues that CFOS's failure to adhere to this contractual provision is a deviation, rendering the COG-SA defenses unavailable to CFOS. However, even assuming that CFOS's failure to deliver the goods to Algec on a sight draft basis breached the contract of carriage, not every breach of contract is a deviation.

The doctrine of deviation developed prior to COGSA as a means of protecting shippers from contractual limits on liability. In the post-COGSA era, the doctrine provides that when a carrier deviates markedly from the contract of carriage, COGSA does not apply because the bill of lading, which acts as the contract of carriage, is nullified. Since the passage of COGSA, courts have applied the doctrine of deviation sparingly, generally only for geographical departures and unauthorized on-deck stowage. *See B.M.A. Industries, Ltd. v. Nigerian Star Line Ltd.*, 786 F.2d 90, 91 (2d Cir.1986) ("deviation" limited to geographic departures and unauthorized on-deck stowage); *SPM Corp. v. M/V Ming Moon*, 965 F.2d 1297, 1304 (3d Cir.1992) (noting that courts of appeals have declined to extend the concept of deviation and agreeing that "doctrine of quasi-deviation should be not be viewed expansively in the post-COGSA era"); *Rockwell Int'l Corp. v. M/V Incotrans Spirit*, 998 F.2d 316, 319 (5th Cir.1993) ("the notion of non-geographic deviation may be '. . . of questionable status under Cogsa [sic]'") (citation omitted).

Although this court has yet to decide whether a misdelivery is a deviation, we have held that a nondelivery is not a deviation. *See C.A. La Seguridad*, 721 F.2d at 325 (carrier's failure to deliver goods did not

---

**5.** Unimac argues that the doctrine of deviation renders both the $500 limit on liability and the one-year statute of limitations unavailable to CFOS. Because we hold that CFOS's delivery of the goods did not constitute a deviation, we need not decide whether a deviation would strip a carrier of both the $500 limitation on liability and the statute of limitations, or as the Fifth Circuit has held, merely of the liability limitation, and not of the one-year statute of limitations. *See Bunge Edible Oil Corp. v. M/VS' Torm Rask & Fort Steele*, 949 F.2d 786, 788 (5th Cir.) ("An unreasonable deviation does not prevent a carrier from invoking the one-year limitations period under COGSA"), *cert. denied*, — U.S. —, 112 S.Ct. 2998, 120 L.Ed.2d 875 (1992).

**6.** The First, Second and Ninth Circuits have all labelled a carrier's failure to secure proper documentation upon delivery a "misdelivery." *See Barretto Peat, Inc. v. Luis Ayala Colon Sucrs., Inc.*, 896 F.2d 656, 660 (1st Cir.1990) (failure to collect bill of lading in exchange for goods is a misdelivery); *B.M.A. Industries, Ltd. v. Nigerian Star Line, Ltd.*, 786 F.2d 90, 91–92 (2d Cir.1986) (carrier's failure to secure original, endorsed bill of lading prior to delivery is a misdelivery); *C–ART, Ltd. v. Hong Kong Islands Line America, S.A.*, 940 F.2d 530, 533 (9th Cir.1991) (failure of carrier to obtain original, endorsed bill of lading prior to delivery of goods, as provided for in bill of lading, was breach of contract constituting a misdelivery), *cert. denied*, — U.S. —, 112 S.Ct. 1762, 118 L.Ed.2d 425 (1992). We agree that CFOS's failure to deliver the goods on a sight draft basis was a misdelivery.

constitute a deviation); *see also C.A. Articulos Nacionales de Goma Gomaven v. M/V Aragua,* 756 F.2d 1156, 1161 (5th Cir.1985) (no deviation where cargo was loaded onto ship but inexplicably, never delivered); *Italia Di Navigazione, S.P.A. v. M.V. Hermes I,* 724 F.2d 21, 22–23 (2d Cir.1983) (refusing to extend doctrine of deviation to nondelivery of goods).

The circuits that have addressed this issue have held that a misdelivery is not a deviation. The Second Circuit, in a case factually similar to this case, held that a carrier's failure to release the shipper's cargo only upon presentation of an original, endorsed bill of lading, as agreed, was a misdelivery which did not constitute a deviation. *B.M.A. Industries, Ltd.,* 786 F.2d at 91–92. *See also Barretto Peat, Inc. v. Luis Ayala Colon Sucrs., Inc.,* 896 F.2d 656, 660 (1st Cir.1990) ("carrier's failure to collect the bill of lading in exchange for the goods is an improper delivery or misdelivery which constitutes a breach of the carriage contract subject to the COGSA one-year statute of limitations").

■ Consistent with our holding that a nondelivery is not a deviation and consistent with the courts' general reluctance to interpret the doctrine of deviation expansively, we join the First and Second Circuits and hold that a misdelivery is not a deviation. Accordingly, the defenses set forth in COGSA apply in this case.

## V.

■ Unimac also argues that COGSA's $500 limit per package should not apply because it did not receive the bill of lading until after the ship had sailed, and thus did not have a fair opportunity to declare a higher value for the goods.

■ Under COGSA, a carrier has limited liability provided that the carrier gives the shipper adequate notice of the $500 limitation by including a clause paramount in the bill of lading and the carrier gives the shipper a fair opportunity to avoid COGSA's limitation by declaring excess value. *Insurance Co. of North America v. M/V Ocean Lynx,* 901 F.2d 934, 939 (11th Cir.1990).

With respect to notice, CFOS's bill of lading not only contained a clause paramount, expressly incorporating COGSA, but it also contained separate provisions setting forth the liability limitation of $500 per package and detailing the steps that the shipper needs to take to obtain "All Risk" insurance. We recognize that Unimac did not receive the bill of lading until after the ship had sailed; nevertheless the ship had yet to reach Australia when Unimac received the document. Thus, upon receipt of the bill of lading, Unimac had notice of the limited liability.

It is also clear that Unimac had ample opportunity to declare excess value and to pay the cost of insurance. This court has held that "[e]ither a clause paramount in the bill of lading or a valid tariff filed with the Federal Maritime Commission that includes an opportunity to declare excess value ... is sufficient to afford the shipper an opportunity to declare excess value." *Id.*

■ The bill of lading contained a clause paramount. Further, CFOS's tariff, on file with the Federal Maritime Commission, states in Rule 12(b) & (c) that if the "Shipper desires to be covered for a valuation in excess of [$500 per package], it must so stipulate in Carrier's Bill of Lading," and pay an additional ad valorem rate of 3.75%. Therefore, both the bill of lading and the tariff afforded Unimac notice and a fair opportunity to declare a higher value for its cargo and pay for insurance, an opportunity which Unimac did not utilize.[7]

For the foregoing reasons, we AFFIRM the district court's grant and denial of partial summary judgment in favor of Unimac and AFFIRM the district court's grant and deni-

---

7. Unimac also argues that because its letter of instruction stated the value of the cargo, it suffices to satisfy the requirements for stating excess value. This argument is without merit. First, CFOS's bills of lading and tariff, as well as COGSA itself, provide that the declaration of excess value must be in the bill of lading. Second, and more important, in addition to declaring the excess value, a shipper must pay an additional charge to secure the excess insurance. Unimac failed to do so and may not now look to the courts for relief which, if granted, would give Unimac the benefit of insurance for which it did not pay.

al of partial summary judgment in favor of CFOS.

AFFIRMED.