## G. W. SHELDON & CO. v. HAMBURG AMERIKANISCHE PACKETFAHRT–ACTIEN–GESELLSCHAFT et al.

Circuit Court of Appeals, Third Circuit.
September 24, 1928.

No. 3718.

250

Forrest E. Single, of New York City (Robert E. Hill and Loring R. Lecraw, both of New York City, of counsel), for appellant.

Wharton Poor, of New York City, for appellees.

Before WOOLLEY and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. This is an appeal by Sheldon & Co., libelant below and appellant here, from a decree of the District Court awarding $400 damages to it on account of a loss of four cases of musical instruments.

On July 4, 1924, Julius Rudert delivered seven cases of musical instruments to the Hamburg-Amerikanische Packetfahrt-Actien-Gesellschaft, hereinafter called the Hamburg Company, at Hamburg, Germany, consigned to G. W. Sheldon & Co., at Baltimore, Md. They were loaded aboard the steamship Emden, at least three of them were. The ship sailed from Hamburg shortly thereafter and arrived at Baltimore on July 30, 1924, where only three of the seven cases could be located. These were delivered to Sheldon & Co., but the other four were lost and have never been found. They disappeared between the time of delivery to the Hamburg Company by Rudert at Hamburg and the delivery of the three cases to Sheldon & Co. at Baltimore, but just where and when they disappeared are not known.

Sheldon & Co. filed a libel against the steamship and in personam against the Hamburg Company for the four cases, demanding damages in the sum of $1,600. The respondent, the Hamburg Company, filed an answer, wherein it admitted the loss and non-delivery of the four cases, but alleged that its liability was limited to $100 per case under two clauses of the bill of lading. One of these provides that: .

"The owner (of the steamship) is liable for each package or each measurement or weight unit, but not in excess of the amount stipulated on the face of this bill of lading."

The other clause provides:

"The value of each package (receipted for as above) does not exceed the sum of $100, unless otherwise stated herein on which basis the rate of freight is adjusted."

The value was not otherwise stated. The bill of lading further provided:

"And finally in accepting this bill of lading the shipper, owner, and consignee of the

goods agree to be bound by all its stipulations, exceptions, and conditions, whether written or printed, as fully as if they were all signed by such shipper, owner, or consignee."

The appellant contended in the court below that it was not bound by the provisions in the bill of lading limiting liability because it is (1) invalid, and (2) inapplicable. Invalidity is not pressed here, and, if it were, the following cases, in our opinion, settle this contention against the appellant. Hart v. Pennsylvania R. R. Co., 112 U. S. 331, 5 S. Ct. 151, 28 L. Ed. 717; American Railway Express Co. v. Lindenburg, 260 U. S. 584, 43 S. Ct. 206, 67 L. Ed. 414; American Railway Express Co. v. Levee, 263 U. S. 19, 44 S. Ct. 11, 68 L. Ed. 140.

█ █ The libelant bases his contention, that the clauses limiting liability are inapplicable, upon the single ground that the ship made a "deviation" as applied to ocean carriers. To deviate, lexicographically, means to stray, to wander. As applied in admiralty law, the term "deviation" was originally and generally employed to express the wandering or straying of a vessel from the customary course of the voyage, but in the course of time it has come to mean any variation in the conduct of a ship in the carriage of goods whereby the risk incident to the shipment will be increased, such as carrying the cargo on the deck of the ship contrary to custom and without the consent of the shipper, delay in carrying the goods, failure to deliver the goods at the port named in the bill of lading and carrying them farther to another port, or bringing them back to the port of original shipment and reshipping them. Such conduct has been held to be a departure from the course of agreed transit and to constitute a "deviation" whereby the goods have been subjected to greater risks, and, when lost or damaged in consequence thereof, clauses of exceptions in bills of lading limiting liability cease to apply. Citta Di Messina (D. C.) 169 F. 472; The Indrapura (D. C.) 171 F. 929; The Sarnia (C. C. A.) 278 F. 459; Niles-Bement-Pond Co. v. Dampkiesaktieselskabet Balto (C. C. A.) 282 F. 235; Calderon v. Atlas S. S. Co., 170 U. S. 272, 18 S. Ct. 588, 42 L. Ed. 1033; St. Johns N. F. Shipping Corporation v. S. A. Companhia Geral, etc., 263 U. S. 119, 44 S. Ct. 30, 68 L. Ed. 201; Buerger v. Cunard Steamship Co., Limited, 25 Lloyds List L. R. 215.

Libelant says that the four cases of musical instruments were overcarried, beyond Baltimore to the port of shipment, as in the

Calderon Case, supra. There is no evidence to this effect. It seeks to establish the fact of overcarriage by the rule of law that, where the existence at one time of a certain condition or state of things of a continuing nature is shown, the general presumption arises that such condition or state continues to exist until the contrary is shown by either circumstantial or direct evidence or until a different presumption is raised from the nature of the subject in question. 1 Greenleaf on Evidence, § 41; Carlson v. City of New York, 150 App. Div. 264, 134 N. Y. S. 661; The R. B. M. Burke (D. C.) 294 F. 987.

Respondent says that libelant cannot prevail on this theory, for the reason that this cause of action was not alleged in the libel or proved in the District Court, and for the further reason that the presumption sought to be established is inapplicable to the facts in this case.

█ A libelant must recover, if at all, upon the cause of action alleged. He may not allege one cause of action and prove another. "The allegata and probata must reciprocally meet to conform to each other." If the law were otherwise, the respondent would never be prepared to meet the proofs in the case. Courts would be subjected to interminable delays, or causes of action would not be decided upon their merits. Where there is neither allegata nor probata in the trial court, the libelant cannot hope to prevail in the appellate court. Hays v. Pittsburgh Packet Co. (D. C.) 33 F. 552; Gentry v. United States (C. C. A.) 101 F. 51; American Mills Co. v. Hoffman (C. C. A.) 275 F. 285; Harrison v. Nixon, 9 Pet. (34 U. S.) 483, 9 L. Ed. 201; Boone v. Chiles, 10 Pet. (35 U. S.) 177, 9 L. Ed. 388.

█ The cause of action alleged by the libelant was failure to deliver the four cases of "music ware" at Baltimore, "by reason of the negligence of the respondent, its agents, servants, or employees, and of the said steamship Emden, and those in charge of her, in the loading, stowage, custody, and care of said shipment of cases of music ware, and this respondent has ever since failed and refused to deliver the aforesaid four cases of music ware to this libelant, or the consignees thereof, in accord with the terms and conditions of said bill or bills of lading."

The first time "deviation" was mentioned as the ground upon which libelant relied was in the fourth and fifth assignments of error:

"IV. The District Court erred in failing to find that the respondent had committed a deviation in carriage of the merchandise.

"V. The District Court erred in failing to

hold that such deviation deprived the respondent of any defense under the provisions of the bill of lading pleaded in partial defense."

The learned trial judge could not be expected to find "that the respondent had committed a deviation in the carriage of the merchandise," when no such request was made and no allegation pleaded or evidence offered to support it. This alleged error may not, therefore, be considered here and made a ground of reversal. Wyss-Thalman v. Maryland Casualty Co. of Baltimore (C. C. A.) 193 F. 53; Blisse v. United States (C. C. A.) 263 F. 961; Mercantile Mut. Insurance Co. v. Folsom, 78 Wall. (85 U. S.) 237, 21 L. Ed. 827; Michigan Insurance Bank v. Eldred, 143 U. S. 293, 12 S. Ct. 450, 36 L. Ed. 162; O'Connell et al. v. United States, 253 U. S. 142, 40 S. Ct. 444, 64 L. Ed. 827; Exporters v. Butterworth-Judson Co., 258 U. S. 365, 42 S. Ct. 331, 66 L. Ed. 663.

However, upon the merits of the case, there is some question as to whether or not the presumption upon which libelant relies to establish overcarriage is applicable to the facts in this case. In certain cases, there is a presumption of the continuance of a state or condition once in existence until the object or purpose of the state or condition is completed. A light is put upon a boat to burn all night, and so, in the absence of evidence to the contrary, it will be presumed to have so burned. The R. F. M. Burke, supra. Goods received by a carrier in good condition are presumed to remain in that condition until delivered to and received by another carrier in due course of their transportation. Smith v. N. Y. Central, 43 Barb. (N. Y.) 225. But, in the instant case, the boxes were delivered to the respondent company at Hamburg to be transported to Baltimore and delivered to the consignee there, and not to be overcarried and returned to Hamburg. It has not, as a fact, been shown that the four cases were actually loaded on board the Emden. They were delivered to the libelant at the wharf or dock in Hamburg, but might have disappeared at the dock in Hamburg before being put on board, or at Baltimore after being unloaded and before delivery. They are not presumed to have been carried beyond their destination contrary to the purpose of the shipment.

Furthermore, there is affirmative evidence introduced by the libelant from which it might be concluded that the respondent did not carry the cases beyond Baltimore back to Hamburg. On April 21, 1925, the respondent wrote the shipper that the "four cases" had been duly shipped from Hamburg to Baltimore on the steamship Emden, and that it had "again written to Baltimore asking our agency there to make a thorough investigation as to the missing four cases." This letter shows that the respondent had before written to its agent at Baltimore, requesting a thorough investigation as to the missing cases there and not at Hamburg. The presumption is not that they were taken back to Hamburg, but that they disappeared before the delivery was undertaken at Baltimore, where they could not be found at the time of unloading. Accordingly, overcarriage is not presumed, and no irregular conduct or deviation before the arrival at Baltimore has been shown.

Again the bill of lading provided against the contention here made:

"If the goods for any reason whatsoever cannot be * * * found at the port of destination, the ship is at liberty to discharge them on the return voyage, or to forward them by some other means to the port of destination, for ship's account but not at ship's risk."

This provision is a defense against the charge of deviation because of overcarriage. Blank v. United States (C. C. A.) 13 F. (2d) 394. The contract embodied in the bill of lading provides "that the value of each package does not exceed $100, unless otherwise stated herein, on which basis the rate of freight is adjusted."

The appellant is seeking to take the case out of the contract provision between it and the respondent. In order to do so, the burden is upon it to prove, not mere negligence, but actual misfeasance, and ordinary negligence by the servants of a corporation is not such misfeasance. In other words, the act which will deprive the carrier of the benefit of a contract having limited liability, must be an affirmative act of wrong doing, not merely ordinary negligence in the course of the bailment. The libelant did not prove any fact which takes the case out of the protection of the contract rights of the bill of lading. It did not bear the burden that was upon it to justify the court in granting the affirmative action which it now desires. Magnin v. Dinsmore, 70 N. Y. 410, 26 Am. Rep. 608; Hart v. Pennsylvania R. R. Co., 112 U. S. 333, 5 S. Ct. 151, 28 L. Ed. 717; American Ry. Express Co. v. Levee, 263 U. S. 19, 44 S. Ct. 11, 68 L. Ed. 140.

The decree of the District Court is affirmed.