# U.S. Court of Appeals for the Third Circuit

No. 25-1549

SLT Imports, Inc., a New Jersey Corporation,
Appellant

v.

SAR Transport Systems Pvt Ltd; Does, 1 through 15.

Appeal from the U.S. District Court, D.N.J.
Judge Evelyn Padin, No. 2:23-cv-18484

Before: Porter, Montgomery-Reeves, and Bove, *Circuit Judges*
Submitted Apr. 7, 2026; Decided May 28, 2026

Opinion of the Court

Porter, *Circuit Judge*.

In this maritime shipping dispute, we are asked whether the Carriage of Goods by Sea Act's ("COGSA") one-year limitation period bars appellant's fraud-in-the-execution claim. The District Court held that it does and granted judgment on the pleadings. We will affirm.

I

Appellant SLT Imports, a New Jersey-based importer, agreed to provide financing for non-party Krishna Food Corp. to import goods from non-party Bikaji Foods International, based in India. Defendant-Appellee SAR Transport Systems, based in India, was selected as the carrier of the cargo. Under this arrangement, Krishna would pay SAR for each delivery by drawing on SLT's bank facility. "All purchases by Kirshna [sic] were to be made by and through SLT with SLT's full real-time knowledge and consent." Appendix ("App.") at 54. These contractual obligations were memorialized in a Bill of Lading

("BOL") for each shipment, on each of which Bikaji was listed as consignor, SLT as consignee, and SAR as carrier. The terms of the BOLs stipulated that, upon delivery, SAR would only release the goods to Krishna upon presentation of an endorsed BOL.

The complaint states that SAR would issue the BOL. But the complaint is unclear as to which entity was responsible for *endorsing* the BOL. It alleges that SAR would turn the goods over to Krishna only "upon presentation and surrender of the original duly endorsed bills of lading." App. at 55. Thus, SAR was not responsible for endorsing the BOL; rather, SAR would issue the BOL and then wait until it was endorsed before releasing the cargo. The complaint then alleges that an endorsed BOL would "only be available or provided to Krishna if it tendered payment on the facility to SLT's bank." App. at 54. Thus, it is implied that Krishna too was not responsible for endorsing the BOL; rather, it received an endorsed BOL from some other party.

That leaves SLT. The complaint alleges that the endorsed-BOL requirement "protected SLT from any failure to pay on the part of Krishna" and "assured [SLT] that Krishna would pay for the goods sold to Krishna." App. at 55. So, all told, the complaint suggests that once Krishna paid for the goods via SLT's bank facility, SLT would endorse the BOL and provide it to Krishna. Krishna, in turn, would presumably submit the endorsed BOL to SAR in exchange for the transfer of the goods.

In November 2021, SLT noticed it had not received interest payments from Krishna on its bank facility for six months. After conducting an audit, SLT discovered that SAR

2

had allegedly made 30 deliveries to Krishna without receiving an endorsed BOL for any of them, as was required.[1] Instead, Krishna provided SAR with letters of indemnity noting on each that the BOL "has not arrived." App. at 80–81.

SLT sued SAR for fraud in the execution and breach of contract. SLT alleges that SAR breached its contracts by "releas[ing] the SLT Cargo . . . to Krishna without presentation and surrender of the original duly endorsed bills of lading." App. at 70–71. And SLT claims "SAR defrauded SLT when it issued Bills of Lading with terms that SAR knew to be false"— i.e., that SLT would endorse the BOL prior to release of the cargo. Appellant's Br. at 9. The District Court granted SAR's motion for judgment on the pleadings with prejudice. It held that SLT's fraud in the execution claim failed because (1) SLT failed to allege a claim for fraud in the execution, (2) SLT's claim is barred by the one-year limitations period established by COGSA, ch. 229, § 3(6), 49 Stat. 1207, 1209 (1936) (46 U.S.C. § 30701 note),[2] (3) the deviation doctrine does not apply, and (4) SLT is not entitled to equitable estoppel. The

---

[1]  Because Krishna could not make payment without SLT's "full real-time knowledge and consent," App. at 54, it is unclear how Krishna had been ordering goods using SLT's credit facility without SLT's "knowledge or consent," App. at 61.

[2]  "Previously, COGSA appeared at 46 U.S.C. § 1303, *et seq.* The Act is still in force but was not recodified. Currently, COGSA appears in a note to 46 U.S.C. § 30701." *Petroleos Mexicanos Refinacion v. M/T King A*, 554 F.3d 99, 100–01 n.2 (3d Cir. 2009).

3

District Court dismissed SLT's breach-of-contract claim as waived and time-barred under COGSA.[3] SLT moved for reconsideration, which the Court denied. SLT timely appealed.

II[4]

SLT's fraud-in-the-execution claim fails on the merits[5]

---

[3] SLT does not challenge the District Court's dismissal of its breach-of-contract claim. Thus, the issue is forfeited, and we address only SLT's fraud-in-the-execution claim.

[4] The District Court had jurisdiction under 28 U.S.C. § 1333(1). We have appellate jurisdiction under 28 U.S.C. § 1291. We review de novo the District Court's judgment on the pleadings. *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010).

A motion for judgment on the pleadings should be granted if, accepting the allegations in the complaint as true and drawing all reasonable inferences in favor of the non-moving party, "the movant establishes that there are no material issues of fact, and he is entitled to judgment as a matter of law." *Zimmerman v. Corbett*, 873 F.3d 414, 417 (3d Cir. 2017) (citation and quotation marks omitted).

[5] SLT at times conflates fraud in the inducement with fraud in the execution. But SLT acknowledged the difference between these two claims to the District Court and clarified that it relied on a fraud-in-the-execution theory alone. *See* Pl.'s Opp'n to Def.'s Mot. for J. Pleadings at 7–8, Dkt. No. 84, *SLT Imports, Inc. v. SAR Transp. Sys. Pvt Ltd.*, 2024 WL 3289649 (D.N.J. July 3, 2024) (No. 23-cv-18484). Thus, it waived any reliance on fraud in the inducement. *See LeBoon v. Lancaster*

4

and leave to amend would be futile because the claim is time-barred under COGSA. We will address each issue below.

A

"Fraud in the execution arises when a party executes an agreement with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms." *Connors v. Fawn Mining Corp.*, 30 F.3d 483, 490 (3d Cir. 1994) (citation modified). The District Court held that SLT failed to state a claim for fraud in the execution because "Plaintiff does not allege that Defendant duped it into thinking the bills of lading were any different than what Plaintiff thought they were." App. at 12. We agree.

SLT does not allege in its complaint that it lacked knowledge or a reasonable opportunity to obtain knowledge of the endorsement requirement. Rather, the complaint alleges that SAR misled SLT by agreeing to release cargo only upon presentation of an endorsed BOL despite its secret intention to

_____

*Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 225 (3d Cir. 2007) ("Waiver is the intentional relinquishment or abandonment of a known right.") (citation and quotation marks omitted).

Further, fraud in the execution is ordinarily an affirmative defense to contract formation, not a freestanding claim. *Connors v. Fawn Mining Corp.*, 30 F.3d 483, 492–93 (3d Cir. 1994); *Elec. Workers Loc. 58 Pension Tr. Fund v. Gary's Elec. Serv. Co.*, 227 F.3d 646, 656 (6th Cir. 2000) ("Fraud in the execution is an affirmative defense, and the defendant bears the burden of proving the defense."). SLT never explains why we should recognize fraud in the execution as a freestanding cause of action.

breach that obligation. *See, e.g.*, App. at 64 ("SAR issued each and every one of the [BOLs] knowing in fact that . . . SAR would not in fact comply with the delivery terms mandated by the [BOLs]."); App. at 65 ("SAR knowingly and willfully ignored its delivery terms and obligations and released SLT's cargoes to Krishna without the presentation and surrender of the original duly endorsed [BOLs]"); App. at 67 ("SAR . . . issued those [BOLs] . . . promising and representing to SLT . . . that it would deliver . . . the SLT cargo . . . knowing at the time that SAR did so, that the promise and representation was false and that SAR would not in fact be releasing the goods to the consignee.").

Thus, the essence of Count I of the complaint is not fraud in the execution but breach of contract. *See Dansko Holdings, Inc. v. Ben. Tr. Co.*, 991 F.3d 494, 501 (3d Cir. 2021) ("A fraud claim is really a contract claim (and must thus be dismissed) if the duty allegedly breached is one created by the parties by the terms of their contract. In other words, a plaintiff cannot say that a defendant defrauded him just by reneging on a contractual promise.") (citation and quotation marks omitted). Pleading Count I as a fraud claim appears to have been an artful attempt to dodge the COGSA limitations period. We now turn to that issue.

B

SLT's claim for fraud in the execution fails for another reason: it is time-barred under COGSA. SLT argues COGSA's one-year limitations period shouldn't apply under the deviation doctrine, but we disagree. And because the time bar renders amendment futile, the District Court did not err in denying leave to amend.

6

COGSA applies to "every bill of lading or similar document of title which is evidence of a contract for the carriage of goods by sea to or from ports of the United States, in foreign trade." 49 Stat. 1207. COGSA absolves carriers "from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered." *Id.* § 3(6), 49 Stat. at 1209.

The complaint alleges twenty fraudulent deliveries spanning from August 30, 2015 to June 20, 2016.[6] SLT treats all twenty BOLs as being subject to the same limitations period. But each BOL is a "separate contract" for which the COGSA limitations period "runs independently." 2A Benedict on Admiralty § 163(a). It makes no difference, for as the District Court correctly stated, "even if some of the deliveries were scheduled [for delivery] in 2017, . . . [SLT's] claim in Count I would be timely only if brought . . . by 2018 at the

---

[6] SLT alleges thirty fraudulent deliveries, but it attaches to the complaint only twenty dated letters of indemnity from allegedly fraudulent deliveries. The other ten are insufficiently pled to satisfy Rule 9(b), which "requires that a fraud plaintiff 'state with particularity the circumstances constituting fraud.'" *City of Warren Police & Fire Ret. Sys. v. Prudential Fin., Inc.*, 70 F.4th 668, 680 (3d Cir. 2023) (quoting Fed. R. Civ. P. 9(b)). "Under that standard, the complaint must describe the time, place, and contents of the false representations or omissions, as well as the identity of the person making the statement and the basis for the statement's falsity." *Id.*

latest." App. at 10. But SLT didn't file suit until August 31, 2022. Thus, SLT's claim for even the most recent BOL is time-barred under COGSA.

2

SLT offers three reasons why the COGSA limitations period should not preclude its claims. First, it argues that "SAR cannot rely on the protections of [COGSA] when it defrauded SLT before any carriage of goods." Appellant's Br. at 20. It points out that COGSA's provisions, including the limitations period, only "cover[] the period from the time when the goods are loaded on to the time when they are discharged from the ship." § 1(e), 49 Stat. 1208. We need not address whether fraud claims fall within COGSA's provisions because, as explained above, SLT alleges fraud in name only. Count I of the complaint alleges repeated failure to perform a term in the BOLs—conduct falling squarely within COGSA's provisions.

Second, SLT appeals to the "principle that, in a proper case, a respondent may, by his representations, promises, or conduct, be estopped to assert the [COGSA statute of limitations]." *United Fruit Co. v. J.A. Folger & Co.*, 270 F.2d 666, 669 (5th Cir. 1959). According to SLT, SAR's allegedly secret intention to deliver the cargo without waiting for an endorsed BOL constitutes misconduct estopping it from relying on the limitations period. But this case is not like *United Fruit*, where the shipper "induc[ed] the carrier, just four days before the running of the statute, to grant" an extension and then, in an about-face, sought "to destroy the effect of the very thing he brought about, after the carrier ha[d] changed his position in detrimental reliance" on the extension. *Id.* at 669. Rather, SAR's alleged intent to breach had no effect on SLT's

8

ability to sue within one year of the conduct. Equitable estoppel will not be "invoked where there was no representation of settlement which produced a false sense of security" or "where no fraudulent or deceitful misrepresentations *precluded suit*." *Knight v. Brown Transp. Corp.*, 806 F.2d 479, 487 (3d Cir. 1986) (emphasis added); *see also In re Copper Antitrust Litig.*, 436 F.3d 782, 790 (7th Cir. 2006) (applying equitable estoppel where "the defendant took active steps to prevent the plaintiff from suing").

Third, SLT claims the deviation doctrine vitiates the limitations period. The deviation doctrine derives from common law. "Prior to [COGSA], an unjustifiable deviation from the agreed route precluded the carrier from relying on any exculpatory provisions in the bill of lading." 2A Benedict on Admiralty § 121. But then Congress passed COGSA, which "recognized the doctrine of deviation but circumscribed it." *SPM Corp. v. M/V Ming Moon*, 965 F.2d 1297, 1303 (3d Cir. 1992). COGSA provides:

> Any deviation in saving or attempting to save life or property at sea, or any reasonable deviation shall not be deemed to be an infringement or breach of this Act or of the contract of carriage, and the carrier shall not be liable for any loss or damage resulting therefrom: *Provided, however,* That if the deviation is for the purpose of loading or unloading cargo or passengers it shall, prima facie, be regarded as unreasonable.

§ 4(4), 49 Stat. 1210.

Thus, COGSA implies that "unreasonable deviations

9

can violate the Act," but it does not define deviation. *SPM Corp.*, 965 F.2d at 1303. Our Court has looked to the pre-COGSA definition of deviation, under which a deviation was primarily understood as geographic, i.e. the "wandering or straying of a vessel from the customary course of the voyage." *Id.* (quoting *G.W. Sheldon & Co. v. Hamburg Amerikanische Packetfahrt A.G.*, 28 F.2d 249, 251 (3d Cir. 1928)). There's no question that SAR's alleged deviation—unloading cargo without an endorsed BOL—does not constitute a geographic deviation.

Rather, SLT argues SAR's conduct was a quasi-deviation. A quasi-deviation refers to any other "variation in the conduct of a ship in the carriage of goods whereby the risk incident to the shipment will be increased, such as carrying the cargo on the deck of the ship contrary to custom and without the consent of the shipper." *SPM Corp.*, 965 F.2d at 1303 (quoting *G.W. Sheldon*, 28 F.2d at 251). *See generally* 2A Benedict on Admiralty § 123. Courts and commentators have been critical of the quasi-deviation doctrine, particularly in the post-COGSA era. *See* 2A Benedict on Admiralty § 123(a) (noting that on-deck stowage "may prove to be the only [quasi-deviation] to survive as a part of the deviation doctrine"); *id.* § 123(e). That is because, "[a]lthough COGSA did not abolish the doctrine of deviation, the statute's very existence and broad scope obviate the need for an expansive concept of deviation to protect shippers, and the statutory limitation on deviations suggests that courts should construe the doctrine narrowly." *SPM Corp.*, 965 F.2d at 1304.

Thus, respecting Congress's limitation on the deviation doctrine, multiple courts have held that non-delivery or misdelivery of goods are *not* quasi-deviations. *See, e.g.*,

10

*Rexroth Hydraudyne B.V. v. Ocean World Lines*, 547 F.3d 351, 364 (2d Cir. 2008); *Unimac Co. v. C.F. Ocean Serv., Inc.*, 43 F.3d 1434, 1437–38 (11th Cir. 1995). And at least two of our sister circuits, facing nearly identical arguments to the one presented here, have held that a carrier's failure to release its cargo only upon presentation of an endorsed BOL constitutes a misdelivery and is therefore *not* a quasi-deviation. *Barretto Peat, Inc. v. Luis Ayala Colon Successors, Inc.*, 896 F.2d 656, 660 (1st Cir. 1990) ("A carrier's failure to collect the bill of lading in exchange for the goods is an improper delivery or misdelivery which constitutes a breach of the carriage contract subject to the COGSA one-year statute of limitations."); *B.M.A. Indus., Ltd. v. Nigerian Star Line, Ltd.*, 786 F.2d 90, 91–92 (2d Cir. 1986). Thus, because the quasi-deviation doctrine is "not one to be extended," we join our sister circuits and "reaffirm the rule that misdelivery of cargo is not a deviation that bars resort to the protections of COGSA." *B.M.A. Indus.*, 786 F.2d at 92.

SLT points to COGSA's provision that "if the deviation is for the purpose of loading or unloading cargo or passengers it shall, prima facie, be regarded as unreasonable." § 4(40, 49 Stat. 1210. According to SLT, because SAR's alleged breach relates to its unloading of cargo without an endorsed BOL, its conduct should be regarded as prima facie unreasonable. But Section 4(4) provides guidance as to which deviations should be deemed facially unreasonable—specifically, deliveries to a different port. *See Spartus Corp. v. The S/S Yafo*, 590 F.2d 1310, 1313–1314 (5th Cir. 1979) ("Thus, Congress has declared that a shipper can make out a case of unreasonable deviation simply by proving that his cargo was offloaded at a place other than the stipulated destination."). Section 4(4) does not purport to redefine what behavior constitutes a deviation to

11

begin with.

Finally, even if the conduct alleged in SLT's complaint were a deviation, it would not vitiate COGSA's one-year limitations period. The deviation doctrine exists to place the carrier into the position of insurer of the cargo; it deals with "variation in the conduct of a ship in the carriage of goods whereby *the risk incident to the shipment* will be increased." *SPM Corp.*, 965 F.2d at 1303 (emphasis added) (quoting *G.W. Sheldon*, 28 F.2d at 251). Thus, the deviation doctrine nullifies contractual or statutory provisions exculpating the carrier for cargo mishaps. 2A Benedict on Admiralty §§ 121, 128. But COGSA's limitations period confines the parties' rights to bring suit; it is unrelated to the allocation of risk for conduct on the high seas. *See Bunge Edible Oil Corp. v. M/Vs' Torm Rask & Fort Steele*, 949 F.2d 786, 788 (5th Cir. 1992) ("An unreasonable deviation does not prevent a carrier from invoking the one-year limitations period under COGSA."); *Mesocap Indus. Ltd. v. Torm Lines*, 194 F.3d 1342, 1344–1345 (11th Cir. 1999) ("[Because] an unreasonable deviation logically disturbs only the parties' expectations concerning the risk of loss, but not their expectations about when they can sue[,] [n]o justification exists . . . to nullify COGSA's limitation period merely because a carrier veers off course.") (citation omitted); *see also* 2A Benedict on Admiralty § 128 ("The weight of authority, including all of the relevant appellate decisions, is in favor of the continued applicability of the time-for-suit provision, even after a deviation.").

For the above reasons, the District Court did not err in granting judgment on the pleadings and dismissing SLT's lawsuit without leave to amend. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 111 (3d Cir. 2002) ("[P]laintiffs whose

complaints fail to state a cause of action are entitled to amend their complaint unless doing so would be inequitable or futile."). Further, the District Court did not abuse its discretion in denying SLT's motion for reconsideration because SLT identified no error or change in law. *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).

### III

For the reasons set forth above, we will affirm the orders of the District Court.

Clinton G. Mead
KAYE, ROSE & PARTNERS LLP

Seth A. Abrams
SCHUMANN HANLON MARGULIES LLC
 *Counsel for Appellant*

Patrick F. Lennon
LENNON MURPHY & PHILLIPS, LLC

Matthew L. Bodi
FINAZZO COSSOLINI O'LEARY MEOLA & HAGER, LLC
 *Counsel for Appellees*